[Dick *v.* Lindsay and Cooper.]

# Dick *versus* Lindsay and Cooper.

1. Where goods are purchased at a private sale, it must be shown that the vendee took and kept possession of them, or the contract is conclusively presumed to be fraudulent as against creditors of the vendor.

2. Where one buys personal property at a public judicial sale, he may leave it with the defendant in the execution, without making it liable to be taken under another execution.

3. Where one buys cloth at a sheriff's sale, and leaves it with the defendant, a tailor, to be made up for his, the defendant's, own profit, he accounting to the purchasers only for the price of the cloth, it is a sale to the defendants, and it is liable to levy and sale, on a subsequent execution.

4. What an agent says about the business of his principal when he is engaged in doing it, may always be heard, not as mere declarations, but as explaining the character and quality of the act.

5. Where one is buying for himself, but falsely declares that his purchase shall enure to the benefit of the debtor, or his family, and this is a mere trick to prevent competition, he acquires no title.

6. For a bidder to say that he intends to give the property purchased to the debtor, or let him redeem it, when such is really his intention, is no fraud.

7. To make a purchase void, it must be proved that the property was obtained at an under value, and by means of a false representation.

ERROR to the District Court of *Philadelphia.*

William M'Makin, a tailor in Philadelphia, became unfortunate in 1851, and his stock of goods, consisting of cloths, and the usual assortment of a tailor's stock in trade, was levied on in the summer of that year, under an execution upon a judgment held by a creditor named Frazer. By agreement between M'Mackin and this creditor's attorney, an auctioneer was employed to sell; and on the 9th August, 1851, the sale, in addition to the sheriff's advertisement, having been advertised in the daily papers by Myers, Claghorn & Co., one of the most extensive auctioneers in the city, was conducted at M'Mackin's store. The attendance was large, the bidding spirited, the prices unusually good, and Mr. Cooper, one of the present defendants, and a creditor of M'Mackin, was present.

The plaintiff in this suit, Mr. Dick, having friendly feelings towards M'Mackin, bought through an agent, a large part of the property for cash, amounting to $739, which was paid over to the execution-creditor. Mr. Dick was not present at the sale. The property thus purchased was left at M'Makin's store, in order that he might make the goods up into garments and sell them, and thus derive what profit he could from his skill and industry, he accounting to Mr. Dick for the prices of the cloths, &c., as sold.

In the month of September following, the present defendants, Cooper and Lindsay, having obtained judgments against

[Dick *v.* Lindsay and Cooper.]

M'Mackin, directed the sheriff to levy upon the stock of goods in his store. The sheriff hesitated, knowing that many of the goods were those just before sold by him, but on being repeatedly urged by their attorney, made the levy upon a large portion of the goods previously bought by Mr. Dick. The sheriff and the defendants were notified by Mr. Dick to desist; but the defendants still persisting in their intention of seizing the goods, and the present plaintiff still claiming them, the sheriff, for his own protection, took the usual rule upon the claimant, under the Sheriff's Interpleader Act, of 10th April, 1848, Purdon's Digest, p. 335. Mr. Dick declined to give bond under this act, but gave the defendants formal notice he would hold them responsible if they caused his property to be levied upon and sold. After a delay of some three months, during which the levy continued, the goods were finally sold under the defendant Cooper's execution, the defendant Lindsay causing proceedings to be stayed upon his execution, about a week prior to this sale. At the second sale, the property brought about $222, and the plaintiff then brought his action. It was shown at the trial by the defendants, under exception made by the plaintiff, by a witness, Boyle, that the agent who purchased for Mr. Dick at the sheriff's sale in August, had said before the sale began, that M'Mackin had been unfortunate in business, and that several of his creditors were going to purchase the goods, and the witness said, he thought the agent added, "and return them to him," and that every bid the witness made would be against M'Mackin. This witness made but one bid, did not get what he wanted, and did not communicate this conversation to others. On his cross-examination, he testified to the room being crowded, and that the reason why he did not purchase, was because *the goods sold too high*, and not from any thing said to him by the plaintiff's agent, and that the goods were not run down by any thing said there, the bidding being spirited. Another witness for the defendants, said he stopped bidding at the sale as soon as he heard the goods were being bought in for M'Mackin, except in one instance, where the plaintiff's agent seemed to manifest no interest in the lot offered. He testified, the goods went off twenty-five per cent. below what he would have given for them, but that the room was crowded, and that the defendant Cooper was present. This witness was told nothing by the plaintiff's agent, but said he heard the alleged statement from the previous witness.

The plaintiff's agent, Mr. Evans, called by the defendants, proved that he attended the sale to buy, on account of his knowledge of the goods; and that he had said to Boyle, he had understood a number of M'Mackin's friends had made up a sum to buy in the goods and let M'Mackin have the use of them, and

[Dick v. Lindsay and Cooper.]

that the witness was desirous the money should buy as many of the goods as possible. He had no recollection of saying that every bid would prejudice M'Mackin, or tend to his detriment. He added, many of the bids were over his mark.

A witness, Gibbs, called by the defendants, testified he had had a conversation some time after the sale, two or three months, when the plaintiff said, he and two or three others had raised $800 to buy the goods for M'Mackin; that they bought them and gave them to him. But upon being cross-examined, he said it was a casual conversation at a hotel, and that he did not charge himself with the precise words.

On the trial, the plaintiff *requested* the court to charge the jury as follows:

1. Goods purchased at a sheriff's sale may safely be left with the former owner on any contract of bailment that the law allows in any other case; and no facility to fraudulent dealing is afforded by this, that is not afforded in the same degree by a naked contract of bailment.

*Answered by the Judge.*—This may be taken to be correct; I so instruct you.

2. No inference can be legally drawn from the fact of the goods remaining with M'Mackin, after their purchase at sheriff's sale by the plaintiff, to show that they belonged to M'Mackin; and nothing short of proof that the goods were M'Mackin's when levied upon by order of the present defendants, can relieve them from the consequences of such illegal seizure.

*Answered.*—I refuse this point as stated here.

3. The plaintiff had an entire right to leave the goods purchased by him under Frazer's execution with M'Mackin, under an agreement with him, that he should use the same and make what profit he could from his skill and labor, by a sale of the goods when manufactured; and the plaintiff, by such an agreement, did not cease to be the owner of the goods.

*Answered.*—As between Mr. M'Mackin, and Mr. Dick, it is well; but between Mr. Dick and the creditors of M'Mackin, the law would regard them as liable to execution.

4. Unless the agent employed by the plaintiff, to purchase the goods for him at the sale under Frazer's execution, was authorized to request other bidders not to purchase, or to make statements in regard to the intended destination of the goods purchased by him, such statements by the agent not being within the scope of his authority, cannot invalidate the plaintiff's title to the goods in question.

*Answered.*—I refuse to give you any such instructions.

5. Unless the request by the plaintiff's agent to other bidders at the sale under Frazer's execution, and the accompanying statements had the effect of hindering competition, and of pre-

venting the goods bringing their fair auction value, the plaintiff's title to the goods bought by him, is in nowise thereby invalidated.

*Answered.*—I refuse so to instruct you.

6. Unless the statements made by the plaintiff's agent at the sale under Frazer's execution, that the goods purchased by the plaintiff were to be for M'Mackin's benefit, was false, the request by the agent to other bidders not to purchase, and the accompanying remarks, did not invalidate the plaintiff's title to the goods so purchased by him.

*Answered.*—I refuse this.    I do not comprehend it.    I refuse it whatever it means.

7. In estimating the damage caused to the plaintiff by the unlawful seizure, and taking away of the goods, the jury are not confined to the actual value of the goods with interest, but may in addition give damages for the wrong done the plaintiff by the illegal seizure of his property ; and the jury are to estimate this from all the facts of the case.

*Answered.*—I affirm this.

The court then charged as follows :—" If these goods were seized by the sheriff under Frazer's execution against M'Mackin, and before the sale, Mr. Dick agreed to buy them in, and leave them in the possession of M'Mackin, to be made up by him for his own benefit, and having made this agreement, employed Mr. Evans to attend at the sale, and make such purchases ; if Evans did so attend, and whilst there, represented to persons attending at the sale in order to purchase, that it was his purpose to purchase for M'Mackin's benefit, and that every bid they gave would be to the loss or injury of M'Mackin ; that in consequence of this representation, a bidder or bidders refrained from bidding ; that Evans made purchases as he had said he intended to do, and these goods so purchased were left by Mr. Dick with Mr. M'Mackin, the plaintiff acquired no title as against the creditors of M'Mackin.

" If these goods were purchased by the plaintiff at the sheriff's sale under Frazer's execution, and left with M'Mackin, to make them into clothes, and dispose of them at his pleasure, and retain all the profits of such sale, the defendants had a right to seize the goods under their executions, if they found them in M'Mackin's possession in the place where they had been bought in ; and such seizure and sale afterwards by the sheriff would not render them trespassers.

" If the plaintiff and others, as friends of M'Mackin, raised a sum of money, in order to buy in the goods of the latter, when sold by the sheriff under Frazer's execution, for the benefit of M'Mackin, and did so buy them in, and afterwards gave them to him, the defendants had a right, on finding the goods in

[Dick *v.* Lindsay and Cooper.]

M'Mackin's possession, to take them by the sheriff under their executions, and sell them."

The admission of declarations made by plaintiff's agent, stated *supra*, the answers to plaintiff's 2d, 3d, 4th, 5th, and 6th points, and the charge of the court, were assigned for error.

*M'Allister*, for plaintiff in error.—What Evans was testified to have said was outside of his authority ; and evidence of an agent's declarations is confined to what is, either by the statement itself, or as tending to determine the quality of contemporary acts, the foundation of or inducement to the agreement. See *Fairlie* v. *Hastings*, 10 Ves. Jr. 123. The remarks said to have been made by Mr. Evans, were foreign from his duty, and could not be used to prejudice Mr. Dick's title. The rule upon this subject is also well laid down in our own books, in the cases of *Hannay* v. *Stewart*, 6 Watts, 487 ; *Clark* v. *Baker*, 2 Whart. 340 ; *Myers* v. *Harvey*, 2 Pa. R. 481 ; *Walter* v. *Gemant*, 1 Har. 515.

————, for defendants in error.

The opinion of the court was delivered March 12, 1853, by

BLACK, J.—This is trespass, for seizing and selling goods under legal process. The goods were at the time of the levy, in the possession of the defendant in the executions, but they were claimed by the present plaintiff as his property. The ground of his claim was that, he had bought them at a previous sheriff's sale, under another execution against the same party, and did not remove them.

When goods are purchased at a private sale, it must be shown that the vendee took and kept possession of them ; otherwise the contract is conclusively presumed to be fraudulent, as against creditors of the vendor. But one who buys personal property at a public judicial sale, may leave it with the defendant in the execution, without making it liable to be taken under another execution. It must be left, however, under such a contract of bailment, as would in law protect it from the bailee's creditors, if he had never been the owner of it. It may be hired or loaned with safety. But if it be sold, or given, the purchaser parts with his title, and cannot maintain trespass against any body for taking it.

In the present case, the defendant in the execution, was M'Mackin, a merchant tailor, and the goods levied on, consisted of the cloths, &c., which were his stock in trade. The plaintiff bought them at the first sheriff's sale, and left them with their previous owner to be made up and sold as he pleased, and for his own profit, accounting to the plaintiff only for the cost: If these were the facts, (and we assumed them to be so, because

[*Dick v.* Lindsay and Cooper.]

they were so submitted to the jury,) then it was not a hiring, nor a loan, nor any other bailment, nor contract of any sort, on which the plaintiff could have reclaimed the cloths from M'Mackin or from his vendees, and consequently not from his creditors. It was a sale at a certain stipulated price. The plaintiff could not have taken them into his own custody, after making such a bargain without violating its plain terms. To enable the plaintiff to maintain this action, it was necessary to show such right of dominion over the property, that he could have claimed possession of the very same goods. A right to demand a certain sum of money in place of the cloths, is not a title to the cloths themselves. On this principle it was held, (1 Johns. 264,) that when a chattel is left by the purchaser with the defendant in the execution, even though it be under the form of a loan, it will be liable to another levy if it be perishable, and if the lender is not to receive it back in specie, but to take instead of it, another article of like nature and value. Here the transaction was not a loan either in form or substance. If the plaintiff had sold these cloths to a stranger at cost price, to be paid when sold again in the shape of made up garments, I think nobody would have doubted that they might be levied upon for the vendee's debts; and surely it is not to be doubted that such a contract is at least, as valid against creditors when made with a stranger, as if made with the former owner of the property.

The presumption is, that personal property is owned by him who has it in possession. If another person desires to make out a title, he has the burden of proof, to show how he came by it, and explain the reason why it is not in his own custody. The court was right, therefore, in refusing to affirm that *no* inference could be legally drawn from the fact of the goods remaining with M'Mackin.

The purchase at the first sale was made for the plaintiff, by an agent whom he sent to the sale for that purpose, and the defendants offered to prove the statements made by the agent at the time of the bidding, in consequence of which it was alleged the goods had been sold at less than their value. This evidence was objected to, but most rightfully admitted. What an agent says about the business of his principal, when he is engaged in doing it, may always be heard, not as mere declarations, but as explaining the character and quality of the act. The words spoken are a part of the thing done. The question here was, whether the purchase was fair, and this could not be determined without ascertaining whether the agent said anything to deter other persons from bidding.

There is another point. The agent declared that his principal was buying the goods for the benefit of the defendant in the execution, and that every bid against him was a bid against

M'Mackin himself, whereupon certain persons present desisted from bidding. The statement was literally true. The bidders were not deceived by it. But the court charged that if such representation was made, and in consequence thereof any bidder refrained from bidding, the plaintiff acquired no title. When requested in writing to say that the statement was not fatal to the title, unless it was false, the judge refused to do so. This we think was erroneous. To avoid the title of a purchaser at sheriff's sale, it is necessary to show that he was guilty of some deception. Where one is buying for himself, but falsely declares that his purchase shall enure to the benefit of the debtor or his family, and this is done as a mere trick, to prevent competition and thus get the property at an under price, he acquires no title. But to say that he intends to give it to the debtor, or let him redeem it, when such is really his intention, is no fraud. It is generous, perhaps it is imprudent, but imprudent generosity is not a crime. One who chooses to run the risk, may lawfully buy in property for a debtor, and leave it with him on any sort of contract he chooses to make. If it be lawful to do a thing, it cannot be wrong for a man to say openly and candidly that he intends to do it. We have decided lately in several cases, not yet reported, that to make the purchase void, it must be proved that the property was obtained at an under value, and by means of a false representation.

Judgment reversed and *venire facias de novo* awarded.